IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION



TATYANA T. IVANOVA-NIKOLOVA, PH.D.
3431 Kilburn Circle Apt 522
Richmond, VA 23233-1099

NO. 4:08-CV-209

Plaintiff,

COMPLAINT

v.

EAST CAROLINA UNIVERSITY,
CHANCELLOR, DR. STEVE BALLARD,
UNIVERSITY OF NORTH CAROLINA

Defendants.

Plaintiff, Tatyana T. Ivanova-Nikolova, resides at 3431 Kilburn Circle Apt 522, Richmond, VA 23233-1099.

Defendants:

1. Defendant, East Carolina University, hereafter "ECU", is a constituent institution of the University of North Carolina and is located in Greenville, NC.
2. Defendant, Dr. Steve Ballard, hereafter "Dr. Ballard" is the Chancellor of East Carolina University. In his official capacity Dr. Ballard is responsible for the enforcement of the provisions of Title VII of the Civil Rights Act of 1964 and the State and University policies consistent with these provisions. Dr. Ballard is sued in his official capacity. The Chancellor office is located at 105 Spilman Building, Greenville, NC 27858-4353.
3. Defendant, the University of North Carolina, hereafter "UNC", is a governmental body, established pursuant to the laws of the State of North Carolina and is charged with controlling its constituent institutions, including ECU.

COMPLAINT

1.   This action is brought by Tatyana T. Ivanova-Nikolova against East Carolina University, the Chancellor of ECU, and the University of North Carolina to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, hereafter "Title VII".

1

2. This Court has jurisdiction over the action under 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1331. Additionally, this Court has jurisdiction over the action under 28 U.S.C. § 1391 (b) because the events giving rise to the claims in this Complaint occurred in this district.
3. Defendant, East Carolina University, is a constituent institution of the University of North Carolina – an institution of higher education established and funded by the State of North Carolina pursuant to state laws.
4. Defendant, the University of North Carolina, is a person within the meaning of 42 U.S.C. § 2000e(a), and an employer within the meaning of 42 U.S.C. § 2000e(b).
5. East Carolina University, has discriminated against Tatyana T. Ivanova-Nikolova, hereafter "Dr. Ivanova-Nikolova", who was formerly employed as an Assistant Professor in the Department of Pharmacology and Toxicology in the ECU Brody School of Medicine, because of her sex, female, in violation of Section 703 (a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a), among other ways, by:
    a. Denying to award tenure and promotion to Associate Professor to Dr. Ivanova-Nikolova in March 2007, although, four world-renown experts solicited by East Carolina University to evaluate her research credentials, all attested that Dr. Ivanova-Nikolova was qualified for tenure and promotion according to the ECU guidelines. On March 12, 2007, Dr. Ivanova-Nikolova received a notice from Phyllis N. Horns, Interim Vice Chancellor of East Carolina University that the University denied her tenure and promotion to an Associate Professor in the Department of Pharmacology and Toxicology ("Department"). The all-male Tenure and Promotion Committee of the Department (Prof. Abdel Abdel-Rahman, Prof. Mohammad Saeed Dar, and Prof. Brian McMillen) and the male chair of the Department (Prof. David Taylor) declined to promote Dr. Ivanova-Nikolova and to award tenure to her. During the last twenty years, out of the fifteen faculty members of the Department not one woman has been tenured. At the same time, the five Basic Sciences Departments in the Brody School of Medicine had only two tenured women out of 53 faculty members.
    b. Failing or refusing to allocate equal Departmental resources such as laboratory space, research assistants and graduate students to Dr. Ivanova-Nikolova, compared to similarly situated male faculty members. Dr. Ivanova-Nikolova received less than 50% of the state-funded resources allocated to a similarly situated male Assistant Professor in the same Department.
    c. Failing or refusing to give fair, objective and non-discriminatory consideration of the time and effort contributed by Dr. Ivanova-Nikolova to the teaching mission of the Department, although East Carolina University and the Department have established policies and guidelines that allow an objective and impartial evaluation of the teaching time and effort of individual faculty members.

d.  Failing or refusing to give fair, objective and non-discriminatory evaluation of the performance of Dr. Ivanova-Nikolova in the three areas of teaching, research and service in accordance to the established terms, conditions and guidelines that govern the employment of Faculty members at East Carolina University. Although East Carolina University and the Department have established policies and guidelines that allow an objective and impartial evaluation of the teaching, research and service credentials of the individual Faculty members, the Defendants ignored the University's guidelines and policies in this case.
e.  Excluding Dr. Ivanova-Nikolova from all 15 thesis committees of the graduate students in the Department despite her having superior credentials (documented by research publications) compared to the male faculty members of the Department in 14 out of the 15 theses. Each thesis committee consists of four or five faculty members. Of all members of the 15 graduate students' thesis committees not one was a female faculty member. According to the Departmental guidelines, the selection of the members of the thesis committee for every graduate student resides with his/her supervisor – in this case with the male faculty members who participated in the initial recommendation against Dr. Ivanova-Nikolova receiving tenure and promotion.
f.  Subjecting Dr. Ivanova-Nikolova to discrimination based on her sex during her hiring and employment which adversely affected the conditions of her employment including explicitly asking during the interview process whether she plans to have more children. The male faculty member (Prof. Donald Barnes) asking the question stated that he knew that such question was illegal, however, he asked the question anyway. Approximately two years later, the same male professor was course coordinator responsible for scheduling the block of lectures during which Dr. Ivanova-Nikolova was required to undergo her first mandatory teaching evaluation. At this time Dr. Ivanova-Nikolova was expecting her second child. She notified the course coordinator about her expected due date several months in advance and requested her block of lectures to be scheduled a month after her due date. The male professor scheduled the block of lectures four days apart from Dr. Ivanova-Nikolova's due date. As a result of the Defendant's discriminatory actions, Dr. Ivanova-Nikolova was under tremendous amount of stress and her second child was born several weeks prematurely. She returned to work with her infant son three days after giving birth in order to complete the preparation for her teaching assignment and mandatory evaluation.
g.  Creating and maintaining a hostile work environment that adversely affected Dr. Ivanova-Nikolova's research program and included an attempt to destroy invaluable and irreplaceable resources for her research program by unplugging the freezer where these resources (purified signaling proteins) were kept. The incident was reported to the security officers on duty in the building and their suggestion to secure this resource was conveyed in writing to the Department Chairman. The Department

3

Chairman refused to implement the inexpensive and simple action necessary to secure Dr. Ivanova-Nikolova's freezer. As a result of this incident, Dr. Ivanova-Nikolova had to spent six months re-testing the catalytic activity of the affected signaling proteins, which slowed down the progress of her research program.

h. Creating and maintaining a hostile work environment that was aimed at adversely affecting Dr. Ivanova-Nikolova's teaching performance that included an occasion when three of the male professors present in the class room as observers were obstructing the lecture presented by Dr. Ivanova-Nikolova to the physician assistant students. While Dr. Ivanova-Nikolova was lecturing, the three male professors were making intrusive comments. Dr. Ivanova-Nikolova was not officially evaluated at that time. The professors present were Prof. David Taylor, Chairman of the Department, Prof. Donald Barnes, Vice-Chairman of the Department and Prof. Abdel Abdel-Rahman, Chair of the Departmental Tenure and Promotion Committee. A physician assistant student reported this incident to the Defendant, ECU, through the student evaluation form mandated by ECU. The Defendant failed or refused to take appropriate action to remedy the situation.

i. Making statements indicating bias toward professional women. Two of the three men (Prof. Dar and Prof. McMillen) who participated in the initial decision against the promotion of Dr. Ivanova-Nikolova have made biased comments about the place of women in the society and explicitly regarding the ability of Dr. Ivanova-Nikolova to advise a graduate student. Dr. Ivanova-Nikolova pursued her rights to appeal this decision before a Faculty Hearing Committee. During the official hearing, several male professors admitted that they heard gender biased comments directed at Dr. Ivanova-Nikolova. None of them expressed any objection at the time to these comments.

j. Intentionally refusing to take appropriate action to remedy the effects of the discrimination. During the appeal process undertaken by Dr. Ivanova-Nikolova, the Defendant, Dr. Ballard through his representative, Prof. Taylor asserted that Dr. Ivanova-Nikolova was denied tenure and promotion because she did not meet the expectations for research productivity set forth in the guidelines of the Department. This was only a pretext to mask the discriminatory actions of the Defendants against Dr. Ivanova-Nikolova. Defendants, ECU and the Office of the Chancellor prevented a fair appeal process by (i) entirely removing a set of documents from the Record on Appeal and scattering another set of documents in an unrelated exhibit. The removed set of documents attested to the excellent teaching performance of Dr. Ivanova-Nikolova. The scattered set of documents attested to the excellence of her research credentials. Both sets of affected documents were mandatory and, according to University guidelines, carried the most significant weight in the tenure and promotion decisions. (ii) The Defendant, Dr. Ballard through his representative, Prof. Taylor provided untruthful testimony regarding the credentials and

4

performance of Dr. Ivanova-Nikolova, although the factual evidence in the case directly contradicted his testimony. (iii) Furthermore, the Defendant Dr. Ballard through his representative, Prof. Taylor, also falsified the guidelines for tenure and promotion in an exhibit presented during the appeal process, although the official guidelines for tenure and promotion were part of the Record on Appeal. (iv) The Assistant University Attorney, Ms. Hope Murphy, was asked by the Defendant Dr. Ballard to prepare official University response in this case for the Board of Governors of UNC. Ms. Murphy built the ECU response entirely on the false testimonies of the four male professors responsible for the denial of Dr. Ivanova-Nikolova's tenure and promotion instead on the facts. In the presence of highly regulated and publicized policies governing the award of tenure and promotion at ECU, the concerted efforts of the Defendants to distort the truth signifies a major attempt by the Defendants to protect illegal discriminatory practices at ECU. Dr. Ivanova-Nikolova also pursued an appeal with the Board of Governors of the UNC. The Board of Governors reviewed the facts in this case twice. In a Decision of January 11, 2008 the Board disagreed with the ECU decision and set it aside for a new review by the Faculty Hearing Committee. In a Decision of November 14, 2008 the Board of the UNC reviewed the same facts, however, reversed their earlier opinion and affirmed the ECU decision. In the later opinion the Board of Governors of UNC reiterated false statements from the ECU response. These statements were related to the core issues in this case and were directly contradicted by the factual evidence provided by Dr. Ivanova-Nikolova through these proceedings. Altogether, the actions of the Board of Governors of the UNC indicate that the Defendant UNC also supports and protects the illegal discriminatory practices established at ECU.

6. As a result of defendants' discrimination as alleged in Paragraph 5, Dr. Ivanova-Nikolova was denied reappointment at ECU and she lost her employment on June 30, 2008. The defendants' discriminatory actions also caused serious damages to the successful scientific program established by Dr. Ivanova-Nikolova at ECU focused on molecular mechanisms of heart function. One of the scientific publications resulting from Dr. Ivanova-Nikolova's program at ECU is the most read and influential publication published from the Department during the last five years. The latest publication from Dr. Ivanova-Nikolova's program at ECU discovered a new therapeutic approach for treatment of congestive heart failure – a serious medical condition prevalent in Eastern North Carolina. The discriminatory actions of the defendants set the research program of Dr. Ivanova-Nikolova years back and consequently delayed with years the translation of the scientific discoveries of this program in new medicines for millions of patients suffering from congestive heart failure. Dr. Ivanova-Nikolova provided all defendants in this case with factual evidence demonstrating the importance of her research program at ECU for the well being of the people of Eastern North

5

Carolina. All defendants chose to support the unlawful discriminatory actions of three male members of the departmental Tenure and Promotion Committee and departmental chairman against Dr. Ivanova-Nikolova instead of taking appropriate actions to remedy the effects of the discrimination suffered by Dr. Ivanova-Nikolova and benefit the people of Eastern North Carolina. Finally, the discriminatory actions of the defendants caused enormous emotional distress not only to Dr. Ivanova-Nikolova, but also to her immediate family and contributed to the untimely death of Dr. Ivanova-Nikolova's father on December 21, 2008. The two young children of Dr. Ivanova-Nikolova also suffered significant financial and emotional losses as a result of the discriminatory actions of the three defendants.

7. The Equal Employment Opportunity Commission ("EEOC") received a timely charge of discrimination (EEOC Charge No. 433-3007-02909) filed by Dr. Ivanova-Nikolova, in which she alleged that ECU discriminated against her, on the basis of her sex in violation of Title VII.

8. Subsequent to filing charge with EEOC, Prof. Taylor provided inadequate (fair = 2) annual evaluation to Dr. Ivanova-Nikolova's teaching, research and service performance for academic year 2007-2008. According to the ECU guidelines and policies, Dr. Ivanova-Nikolova's performance during the academic year qualified her for excellent (5) evaluations in all three areas of her service to the University. Although, Dr. Ivanova-Nikolova indicated in a letter to Prof. Taylor the vast discrepancies between the written ECU guidelines and his evaluation, Prof. Taylor declined both to change his annual evaluation and to provide any response.

9. Defendant ECU has violated § 704 (a) of Title VII, 42U.S.C. § 2000c-3(a), by refusing to provide unbiased and just annual evaluation to Dr. Ivanova-Nikolova in retaliation for bringing a Title VII claim against the Defendant.

10. The EEOC subsequently issued a notice of right-to-sue on Dr. Ivanova-Nikolova's charge. Having received such notice of right-to-sue, plaintiff Dr. Ivanova-Nikolova alleges violation by defendants of the provisions of Title VII in her complaint.

11. All conditions precedent to the filing of this complaint have been performed or have occurred.

WHEREFORE, plaintiff prays that the Court grant the following relief:

    a) Enjoin Defendants from failing or refusing to take appropriate nondiscriminatory measures to overcome the effects of the discrimination and retaliation suffered by Dr. Ivanova-Nikolova;

    b) Award sufficient remedial relief to make whole Dr. Ivanova-Nikolova for the losses she has suffered as a result of the discrimination alleged in this Complaint. Based on the loss of earning potential and her current and previous salary, Dr. Ivanova-Nikolova seeks $ 600,000.00 in relief for future lost earnings and $1, 000, 000.00 in relief for recovery of her research program.

c) Award compensatory and punitive damages to Dr. Ivanova-Nikolova for psychological injuries incurred as a result of the intentional discrimination against her as alleged in this complaint in the amount of $ 300,000.00;
d) Award such additional relief as justice may require, together with plaintiff's costs, attorney's fees and disbursements in this action

December 23, 2008               Plaintiff: Tatyana T. Ivanova-Nikolova, Ph.D.
                                3431 Kilburn Circle, Apt. 522
                                Richmond, VA 23233-1099

                                Phone Number: (804) 360-0963

7

EEOC Form 161 (2/08)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Tatyana Ivanova-Nikolova<br>214 Adams Blvd.<br>Greenville, NC 27858 | From: | Raleigh Area Office<br>1309 Annapolis Drive<br>Raleigh, NC 27608 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 433-2007-02909 | Ola M. Wiggins,<br>Senior Investigator | (919) 856-4094 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

- NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Thomas M. Colclough,
Director

9-30-08
(Date Mailed)

Enclosures(s)

cc: