IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No. 4:08-CV-00209-BR

TATYANA T. IVANOVA-NIKOLOVA,
PH.D.,

                    Plaintiff,

v.

EAST CAROLINA UNIVERSITY,

                    Defendant.

AFFIDAVIT OF
PHYLLIS N. HORNS

      NOW COMES Phyllis N. Horns, R.N., D.S.N., F.A.A.N., being first duly sworn, and states the following:

      1.    I am over 18 years old and am otherwise competent to give this statement.

      2.    The facts stated in this affidavit are based on my own personal knowledge.

      3.    I am employed at East Carolina University (ECU) as Vice Chancellor for Health Sciences. I came to ECU in 1988 as a full Professor. I served as the Dean of the College of Nursing from 1990 until October 2009. I have a doctorate in nursing science (D.S.N.) from the University of Alabama at Birmingham, and I am a Fellow of the American Academy of Nursing (F.A.A.N.).

      4.    Since April 2009, I have served as ECU's Vice Chancellor for Health Sciences. As Vice Chancellor, I guide and oversee the Brody School of Medicine, the College of Nursing, the College of Allied Health Sciences, the School of Dental Medicine, and the William E. Laupus Health Sciences Library.

      5.    Prior to my current service as Vice Chancellor, I served as Interim Vice Chancellor for Health Sciences from November 2006 until April 2009. In addition, I had served as Interim Vice Chancellor during the 2001–2002 school year.

      6.    I served as Interim Dean of the Brody School of Medicine from November 2006 until September 2008.

7. At the time Dr. Tatyana T. Ivanova-Nikolova sought tenure and promotion during the 2006–2007 school year, I was serving as both Interim Dean of the Brody School of Medicine and as the Interim Vice Chancellor for Health Sciences.

8. Nationwide, women are under-represented in the sciences in general, and are under-represented in the basic sciences, in particular. It is a goal of the Brody School of Medicine, and of ECU generally, to increase its number of female faculty. Rather than seeking to discriminate against women in the tenure and promotion process, the Brody School of Medicine actively seeks to recruit and retain female faculty, including helping them advance in their careers. But male and female candidates for promotion and tenure must meet the same high standards.

9. As a demonstration of the Brody School of Medicine's commitment to gender diversity, its Strategic Plan for 2007 and 2008 included an "action item" to "Create support structures for underrepresented faculty: Women and Faculty of Color (clinical and basic sciences)." These support structures include increasing funding to support female faculty; modifying the policy on tenure to extend its time frame and permit part-time faculty to obtain tenure; identifying available grants and providing assistance with grant-writing; and securing mentoring and collaboration with successful faculty members. One of the fifteen contributors to this Strategic Plan was Dr. Rukiyah Van Dross, a female tenure-track professor in the Department of Pharmacology and Toxicology and a colleague of Dr. Ivanova-Nikolova. Another contributor was Dr. Todd Savitt, who served as the primary reviewer of Dr. Ivanova-Nikolova for the Brody School of Medicine school-wide Tenure and Promotions Committee. As explained more fully below, Dr. Savitt's committee unanimously recommended against tenure and promotion for Dr. Ivanova-Nikolova. (Def.'s Ex. 21)

10. Besides the Brody School of Medicine's commitment to diversity, I am personally a strong advocate for female faculty and staff. I strive to recruit and retain women as professors and administrators.

11. The tenure and promotion process for faculty candidates at ECU is governed by Appendix D of the East Carolina University Faculty Manual. Appendix D is titled "Tenure and Promotion Policies and Procedures of East Carolina University." Although Appendix D is periodically revised by the Faculty Senate, as is the entire Faculty Manual, most revisions have been minor, and the same general process has been in place for decades. (Def.'s Ex. 18)

12. A faculty candidate seeking tenure and/or promotion in the Brody School of Medicine is first reviewed within the department by the departmental tenure and promotion committee. That committee then makes a recommendation

2

to the department chair. The department chair evaluates the faculty candidate, reviews the recommendation made by the departmental committee, and then makes a recommendation to the Dean of the Brody School of Medicine. Before the Dean makes an evaluation, the faculty candidate is reviewed by the school-wide Tenure and Promotions Committee, comprised of nine tenured faculty members from across the spectrum of departments within the Brody School of Medicine. The Tenure and Promotions Committee makes its recommendation to the Dean. The Dean makes his/her own independent evaluation, taking into account the recommendations from the departmental committee, department chair, and school-wide Tenure and Promotions Committee. The Dean's recommendation and the previous recommendations are then given to the Vice Chancellor who oversees the Brody School of Medicine. (Def.'s Exs. 18–19)

13. If the Vice Chancellor concurs with a recommendation for promotion and/or tenure, then her recommendation is forwarded to the Chancellor. The Chancellor's decision on promotion is final, while the Chancellor's decision on tenure is submitted to the university's Board of Trustees for final approval. (Def.'s Ex. 18)

14. By contrast, if the Vice Chancellor agrees with a recommendation not to confer promotion and tenure, then the Vice Chancellor's decision is final. (Def.'s Ex. 18)

15. A faculty member who disagrees with a final decision on promotion and/or tenure can pursue her grievance through ECU's faculty grievance procedures.

16. With regard to Dr. Ivanova-Nikolova's candidacy for tenure and promotion, the Pharmacology and Toxicology departmental tenure and promotion committee made its recommendation on 6 November 2006; Department Chair David Taylor made his recommendation on 6 December 2006, and the Brody School of Medicine Tenure and Promotions Committee made its recommendation to me on 25 January 2007. (Def.'s Exs. 11, 16)

17. The recommendations from the departmental committee, department chair, and school-wide Tenure and Promotions Committee all agreed Dr. Ivanova-Nikolova did not qualify for tenure and promotion. This was not a situation where tenured faculty members were in dispute about a candidate's qualifications for tenure and promotion, as is sometimes the case. As you may imagine, tenured faculty members are independent-minded and often ready to dispute the minutiae of any decision. Instead, the unanimity of these recommendations demonstrated the considered view of numerous tenured faculty members that Dr. Ivanova-Nikolova did not meet the departmental standards for tenure and promotion.

3

18. I gave consideration to the recommendations made by the departmental committee, the department chair, and the school-wide Tenure and Promotions Committee. The Pharmacology and Toxicology departmental committee and department chair are tenured faculty members with a professional background, experience, and expertise similar to that of Dr. Ivanova-Nikolova. They all have earned tenure in that department, and have knowledge of the type of research, teaching, and service performed by Dr. Ivanova-Nikolova. The Brody School of Medicine Tenure and Promotions Committee serves to ensure that each faculty candidate receives a fair and unbiased evaluation from nine tenured faculty members who perform their review separate from the department's consideration. The Committee, which included three women, made its unanimous recommendation on Dr. Ivanova-Nikolova independently from the recommendation of the departmental committee and department chair. Dr. Ivanova-Nikolova, like each faculty candidate, was given extensive review and discussion from the Committee before it made its recommendation. Although I considered all of these recommendations, they were not determinative.

19. Ultimately, the decision to deny Dr. Ivanova-Nikolova tenure and promotion was my own. As noted above in paragraphs five, six, and seven, at the time Dr. Ivanova-Nikolova sought tenure and promotion, I was serving as both Interim Dean of the Brody School of Medicine and as the Interim Vice Chancellor for Health Sciences. Thus, my decision was made as both Dean and Vice Chancellor. Measuring her personnel action dossier (PAD) against the tenure and promotion guidelines for the Department of Pharmacology and Toxicology, she failed to meet the guidelines. She was expected to have published at least six full-length articles in peer-reviewed journals, but managed only two. While those two publications were strong—and I gave them extra consideration for tenure and promotion—those two articles did not come close to meeting the publication expectation. She also failed to secure any external funding whatsoever. Even with almost two additional years to meet the standards, her output was meager and she secured no grants. Though her teaching and service were adequate, she did not come close to meeting the standards for research. In the basic sciences, research is the most important factor for consideration of tenure and promotion. I determined that Dr. Ivanova-Nikolova did not meet our standards. (Def.'s Ex. 20)

20. I gave careful consideration to Dr. Ivanova-Nikolova's candidacy, including her PAD, the letters from external reviewers, her productivity and quality of work at ECU, her accomplishments and potential for future achievement, and the concurring recommendations from the department and school-wide Tenure and Promotions Committee. As a result of my review, I determined Dr. Ivanova-Nikolova did not meet the requirements for tenure and promotion in the Brody School of Medicine.

21. The decision to deny tenure and promotion to Dr. Ivanova-Nikolova was fairly easy. She was not a strong candidate. I did not have to struggle to make this decision.

22. By contrast, just this past year I considered a female candidate for tenure and promotion from another basic science department in the Brody School of Medicine who was not recommended by her departmental committee and department chair. The school-wide Tenure and Promotions Committee did recommend her for tenure and promotion, as did the Dean. Her candidacy was a much tougher question than the decision on Dr. Ivanova-Nikolova. Ultimately, after my own thorough review, I decided the candidate met the requirements for tenure and promotion.

23. On 8 March 2007, I sent a letter to Dr. Ivanova-Nikolova informing her of my decision to deny her tenure and promotion. Accordingly, the 2007–2008 academic year was Dr. Ivanova-Nikolova's final year of employment at ECU's Brody School of Medicine, fulfilling the last year of her probationary term appointment. (Def.'s Ex. 16)

24. I am a woman. I did not discriminate against Dr. Ivanova-Nikolova on the basis of her gender. I denied her tenure and promotion because, in my professional opinion, she did not meet the requirements and expectations we have in the Brody School of Medicine.

25. Dr. Ivanova-Nikolova's assertion that ECU discriminated against her on the basis of her gender is wrong. As the Vice Chancellor for Health Sciences at ECU, the university's decision on her tenure and promotion was made by me. In essence, Dr. Ivanova-Nikolova is asserting that I, as a woman, discriminated against her for tenure and promotion on the basis that she is a woman. That is absurd.

26. I have reflected a great deal on the allegations of gender discrimination and harassment made by Dr. Ivanova-Nikolova. Any such allegations concern me; I take them very seriously. But I saw no evidence that any of the members of the departmental tenure and promotion committee, the department chair, and the members of the Brody School of Medicine Tenure and Promotions Committee, made their recommendations about tenure and promotion because they were biased or discriminatory against Dr. Ivanova-Nikolova's gender. I do not believe that any of those tenured faculty members made their recommendation against tenure and promotion because Dr. Ivanova-Nikolova is a woman. In thinking about her varied allegations, there may be language or cultural barriers which have led to some minor confusion or misunderstandings, but I saw nothing that indicates or implies any kind of discrimination or harassment.

27.  Dr. Ivanova-Nikolova alleges she did not get the resources necessary to be successful, such as participation on thesis committees, or additional technicians and graduate students for help in her research. I find those accusations to be simply not credible. She was treated very equitably. She did not receive any less assistance and resources than any other junior faculty member in her department, or what junior faculty receive in other departments.

28.  I saw no evidence of any kind of gender discrimination against Dr. Ivanova-Nikolova prior to, during, or after her candidacy for tenure and promotion.

29.  I am aware that Dr. Ivanova-Nikolova also alleges that employees of ECU harassed her on the basis of her gender, created and maintained a hostile work environment, and retaliated against her when she made an allegation to the Equal Employment Opportunity Commission (EEOC). Again, as a woman, I did not harass Dr. Ivanova-Nikolova, create or maintain a hostile work environment, or retaliate against her. Furthermore, I saw no evidence that anyone at ECU harassed, created or maintained a hostile work environment, or retaliated against Dr. Ivanova-Nikolova.

The foregoing affidavit is a true statement related to *Ivanova-Nikolova v. East Carolina University*, Case No.: 4:08-CV-209BR, and based on my own personal knowledge.

_____
Phyllis N. Horns

Sworn to and subscribed before me this 16 day of November 2010.

_____
Notary Public

My Commission expires: 12/22/2013