| | |
|---|---|
| TATYANA T. IVANOVA-NIKOLOVA, PH.D., <br><br> Plaintiff, <br><br> v. <br><br> EAST CAROLINA UNIVERSITY, <br><br> Defendant. | **AFFIDAVIT OF KARLENE HEWAN-LOWE** |

NOW COMES Karlene Hewan-Lowe, M.D., being first duly sworn, and states the following:

1.     I am over 18 years old and am otherwise competent to give this statement.

2.     The facts stated in this affidavit are based on my own personal knowledge.

3.     I am employed at East Carolina University (ECU) as an associate professor in the Department of Pathology and Laboratory Medicine in the Brody School of Medicine. I joined ECU in 2001 as a tenure-track associate professor and was granted tenure in 2007. I received my Bachelors in Medicine and Bachelors in Surgery (the equivalent of an M.D.) from the University of the West Indies in 1972. I am a board-certified pathologist in both anatomic and clinical pathology. My clinical and research interests include renal pathology and electron microscopy.

4.     The Brody School of Medicine has nineteen departments, each with its own set of professors and department chair. The various departments include: Anatomy and Cell Biology; Biochemistry and Molecular Biology; Cardiovascular Sciences; Comparative Medicine; Emergency Medicine; Family Medicine; Internal Medicine; Medical Humanities; Microbiology and Immunology; Obstetrics/Gynecology; Pathology and Laboratory Medicine; Pediatrics; Pharmacology and Toxicology; Physical Medicine and Rehabilitation; Physiology; Psychiatry; Public Health; Radiation Oncology; and Surgery.

5. The Brody School of Medicine utilizes a Tenure and Promotions Committee to advise the Dean on personnel recommendations. Nine tenured faculty members serve on the Tenure and Promotions Committee, with the assistance of a non-voting resource member. Four of the tenured faculty members represent the clinical sciences departments, and four represent the basic sciences departments. These eight members serve staggered four-year terms, with the voting faculty electing one clinical science and one basic science member each year. The ninth tenured faculty member is appointed by the Dean each year. All nine tenured faculty members have voting privileges. None of the nine tenured faculty members can be department chairs or members of the Dean's administrative staff. (Def.'s Ex. 19)

6. Each faculty candidate seeking promotion and/or tenure prepares a personnel action dossier (PAD). A PAD is a lengthy collection of documents and list of accomplishments in summary form that provides the candidate's record for consideration; it is compiled in the manner described in Appendix D of ECU's Faculty Manual. The PAD has many components, including the candidate's curriculum vitae; education and training; teaching and advising of students; teaching evaluations; research publications, posters, presentations, clinical trials, patents, etc.; grants and proposals for grants; professional and university service; administrative activities; and honors and other noteworthy activity. In addition, the PAD includes letters from several external reviewers. (Def.'s Ex. 18)

7. The faculty candidate seeking promotion and/or tenure is first considered by her own department's tenure and promotion committee, which makes a recommendation to the department chair. The department chair then considers the faculty candidate, and makes his own recommendation. The Brody School of Medicine Tenure and Promotions Committee then reviews the recommendations for promotion and tenure made by each department's committee and department chair.

8. In the review for promotion and/or tenure, the Tenure and Promotions Committee pays close attention to the candidate's PAD. The Committee examines the productivity and quality of the candidate's work since the date of hire, tenure, or last promotion (whichever is more recent), while also examining the accomplishments during the candidate's entire career. The Committee assigns two of its nine members to serve as primary and secondary reviewers, who go through the candidate's PAD with a fine-tooth comb. Both reviewers report back to the entire nine-member Committee on whether, in their professional opinion, the candidate meets the tenure and/or promotion criteria of the candidate's department. After these reports, the entire committee seeks clarification and debates the relevant facts. Finally, all nine members vote. This collective recommendation of the Tenure and Promotions Committee is made to the Dean of the Brody School of Medicine.

2

9.      The Tenure and Promotions Committee, a school-wide committee, makes its recommendation on tenure and/or promotion wholly independent of the departmental recommendation. The Committee is charged with making an unbiased and fair determination.

10.     During the 2006–2007 school year, the Tenure and Promotions Committee was composed of three women and six men. The members included the following tenured faculty: James Byrd; James Cummings; Karlene Hewan-Lowe; Kathy Kolasa; James McCubrey; John Moran; Todd Savitt; Edward Seidel; and Ann Sperry.

11.     I served as the Dean's appointee to the Tenure and Promotions Committee for three academic years, 2006–2007, 2007–2008, and 2008–2009.

12.     The Tenure and Promotions Committee considered a total of eight faculty candidates during the 2006–2007 school year. One of those candidates was Dr. Tatyana T. Ivanova-Nikolova, who was seeking tenure as well as promotion from assistant professor to associate professor.

13.     I served as the secondary reviewer for Dr. Ivanova-Nikolova's candidacy. In that role, I spent a significant amount of time carefully reviewing her PAD and evaluating her candidacy for tenure and promotion. I compared all of her qualifications with the department's guidelines for tenure and promotion. I read her publications, examined her progress toward tenure letters, and looked over her scores in teaching evaluations and other metrics of productivity and service. In my professional opinion, Dr. Ivanova-Nikolova did not meet the requirements for tenure and promotion within the Department of Pharmacology and Toxicology. Some departments are more rigid in their requirements, and some are looser; the Department of Pharmacology and Toxicology has high standards for a candidate to meet. Dr. Ivanova-Nikolova produced only two published articles in peer-reviewed journals, compared to the expectation of six papers, which to my mind was a big sticking point. She also did not secure any external funding at all. Her deficiencies in the research expectations were not counterbalanced by significant strengths in other areas. To my mind, her prospects for tenure and promotion were not good.

14.     On the evening of 9 January 2007, the Tenure and Promotions Committee met to consider Dr. Ivanova-Nikolova's candidacy for tenure and promotion to associate professor. I do not recall all of the details of this discussion, but I do know that the primary reviewer, Todd Savitt, made his presentation and then I gave my thoughts to the committee. The committee discussed Dr. Ivanova-Nikolova's candidacy as a group, weighing her strengths and weaknesses. Her low level of productivity as a researcher and lack of external

3

funding were significant problems. In the collective professional opinion of all nine tenured faculty members, Dr. Ivanova-Nikolova did not satisfy the high standard for conferral of tenure and promotion to associate professor.

15.     On 25 January 2007, the Tenure and Promotion Committee made its unanimous recommendation to Phyllis Horns, Interim Dean of the Brody School of Medicine and Interim Vice Chancellor for Health Sciences, against granting tenure and promotion to Dr. Ivanova-Nikolova.

16.     It is my understanding that Dr. Ivanova-Nikolova alleges ECU discriminated against her on the basis of her gender when she was denied tenure and promotion.

17.     As a woman, I did not discriminate against Dr. Ivanova-Nikolova on the basis of her gender. My consideration and recommendation regarding tenure and promotion for Dr. Ivanova-Nikolova was not made on the basis of her being a woman, and I did not discriminate against her on that basis.

18.     Furthermore, the Tenure and Promotions Committee, which included three women, did not discriminate against Dr. Ivanova-Nikolova on the basis of her gender. Her gender played no role in our discussions and deliberations; it was simply immaterial. She was given no greater or lesser consideration as a candidate due to being a woman. As summarized above, the Tenure and Promotions Committee did not believe that Dr. Ivanova-Nikolova met the requirements for tenure and promotion in the Brody School of Medicine. I have no reason to believe that anyone on the Tenure and Promotions Committee disfavored or discriminated against Dr. Ivanova-Nikolova's candidacy for tenure and promotion on the basis of her gender

19.     It is my understanding that Dr. Ivanova-Nikolova also alleges that employees of ECU harassed her on the basis of her gender and retaliated against her when she made an allegation to the Equal Employment Opportunity Commission (EEOC).

20.     As a woman, I did not harass Dr. Ivanova-Nikolova or retaliate against her.

21.     I saw no evidence that anyone at ECU discriminated against Dr. Ivanova-Nikolova on the basis of her gender, whether considering her for tenure and promotion, or otherwise. Furthermore, I saw no evidence that anyone at ECU harassed or retaliated against Dr. Ivanova-Nikolova.

4

The foregoing affidavit is a true statement related to *Ivanova-Nikolova v. East Carolina University*, Case No.: 4:08-CV-209BR, and based on my own personal knowledge.

_Karlene Hewan-Lowe_
Karlene Hewan-Lowe

Sworn to and subscribed before me this _15th_ day of November 2010.

_Linda W. Pogo_
Notary Public

My Commission expires: _10/5/2013_