IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION
Civil Action No. 4:08-CV-209-BR

| | |
|---|---|
| TATYANA T. IVANOVA-NIKOLOVA, PH.D.<br><br>Plaintiff,<br><br>v.<br><br>EAST CAROLINA UNIVERSITY<br><br>Defendant. | AFFIDAVIT IN RESPONSE TO DEFENDANTS'MOTION FOR SUMMARY JUDGMENT OF December 1, 2010 |

I am the plaintiff in the above action.

I am a naturalized citizen of the United States and I am over the age of 18 and under no disability that would interfere with my ability to present the facts in this affidavit.

I testify to the contents of this affidavit based on my personal knowledge.

On December 1, 2010, the defendants East Carolina University ("ECU"), submitted a motion to this Court for summary judgment in this case.

This affidavit constitutes my response to defendants' motion for summary judgment of December 1, 2010. Supporting documentation is also included.

My response to the particular arguments of the defendants is as follows.

**Argument 1. Plaintiff's claim of discrimination fails because plaintiff cannot demonstrate gender discrimination and cannot even make a prima facie case.**

    **A. Only the denial of tenure and promotion falls within the statute of limitations.**

**Response:** As I indicated in my previous Affidavit of May 2009, in response to previous Defendant's motion for partial dismissal of charges, the academic appointments are conceptually different from the majority of other appointments.

As indicated earlier, Appendix D of the ECU Faculty Manual defines the terms and conditions for appointments and reappointments at ECU. A copy of Appendix D is provided to the Court as **Exhibit 1**. The same document defines also the procedures for promotion and conferral of permanent tenure.

According to Appendix D, "conferral of permanent tenure shall be based on the faculty member's demonstrated professional competence in teaching, research and creative activity, and service; a potential for future contributions; and the institution's needs and resources. While teaching is the first consideration, neither teaching nor research and creative activity nor patient care nor service is the sole measure of a faculty member's competence and contribution."

The professional competence of a faculty member is judged during a probationary appointment. At the rank of Assistant Professor the normal probationary term is seven years, consisting of an initial three-year appointment and two successive two-year appointments. Further Appendix D specifies: "In order to afford the maximum opportunity for tenure, the probationary term for personnel, whose contract date occurs earlier than July 1 for faculty in the Division of Health Sciences will be measured from the beginning of the subsequent July 1."

During a probationary appointment, each faculty member is required to compile a Personnel Action Dossier (PAD). The PAD is a file containing the materials for evaluating the professional activity of the individual faculty member. The PAD shall include documents mandated by ECU that are relevant to the faculty member's teaching, research/creative activity, and service. This PAD is used by the unit's Tenure and Promotion Committees and by the unit administrator in making personnel recommendations.

After this brief definition of different terms in Appendix D, I also provided the written contract that set out the terms and conditions of my appointment at ECU (**Exhibit 2**). My contract letter defined that **my contract date was August 1, 1999** and **my probationary term at ECU began on July 1, 2000.**

Since Appendix D dictates that the tenure and promotion decisions are based on the Personnel Action Dossier and this dossier is a cumulative file built from the beginning to the end of the probationary term, I respectfully request this Court to take into account all events of gender discrimination and hostile work environment that occurred after the beginning of my probationary term at ECU on July 1, 2000.

**B. Plaintiff cannot demonstrate ECU denied her tenure and promotion because of her gender.**

**Response:**
**Background.** Before reviewing the evidence related to the denial of my tenure and promotion by ECU, I will summarize the information about the composition and research

infrastructure of the Department of Pharmacology. This overview would facilitate the examination of the evidence.

**Composition of the Department of Pharmacology and the Basic Sciences departments in the Brody School of Medicine** – I was hired as an Assistant Professor on tenure track in August 1999 after a national search that was advertised in major scientific journals like *Science* and *Nature*. When I came on board, the department consisted of seven full Professors, with more than 20 years of service (Dr. Wooles, the previous chair; Dr. Abdel-Rahman; Dr. Dar; Dr. McMillen; Dr. Barnes; Dr. Ingenito; and Dr. Mustafa), and of two Assistant Professors on tenure track (Dr. Sperry and Dr. Cozzi). At the time when the departmental decision to deny my tenure and promotion was made in December 2006, both Assistant Professors have left the department between the forth and fifth year of their employment. Meanwhile, three of the seven veteran members gradually retired (Dr. Wooles in 2000, Dr. Ingenito in 2001, and Dr. Barnes entered phased retirement in 2006), the forth professor - Dr. Mustafa - moved to a different institution in 2005 to become an Associate Dean. The remaining three of the original seven veteran members were the three members of the departmental Tenure and Promotion Committees. Each one of them was granted tenure more than 20 years ago. The only person that was granted tenure while I was on board was Professor David A. Taylor, who was hired with tenure in December 2000 to become the new chairman, following the retirement of the previous chair. Dr. Taylor hired two Assistant Professors on tenured track, Dr. Soderstrom in 2002 and Dr. Van Dross in 2005, respectively. Dr. Rukiyah Van Dross is an African American woman who was hired without a national search as a result of a dual recruitment package. Her husband, James F. Anderson, PhD was recruited at the same time (2005) as Professor and Chair of the Department of Criminal Justice in the College of Human Ecology at East Carolina University. A third Assistant Professors on tenured track, Dr. Robidoux, joined the department in August 2007.

During its existence the Department of Pharmacology and Toxicology had one tenured female member, Dr. Andrea Hunter who died in 1986.

The Department of Pharmacology and Toxicology is one of five Basic Sciences departments in the Brody School of Medicine. The other four Basic Sciences departments are Anatomy and Cell Biology; Biochemistry and Molecular Biology; Microbiology and Immunology; and Physiology (**Exhibit 3**).

Together the five Basic Sciences departments had two tenured female members out of 53 tenured and tenure-track faculty members – Dr. Ann Sperry who moved from Pharmacology to the Department of Anatomy and Cell Biology at the beginning of 2001, and Cheryl Knudson who was hired by the former Dean, Cynda Johnson MD, with tenure to become the new chair of Anatomy and Cell Biology.

At the time when my tenure was denied, six other female faculty members (out of the 53) were on tenure track:
Yan-hua Chen, Ph.D., Assistant Professor in Anatomy and Cell Biology;

Maria Ruiz-Echevarria, PhD, Assistant Professor in Biochemistry and Molecular Biology;
Ruth A. Schwalbe, PhD, Assistant Professor in Biochemistry and Molecular Biology;
Isabelle M. Lemasson, PhD, Assistant Professor in Microbiology and Immunology;
Rachel L. Roper, PhD, Assistant Professor in Microbiology and Immunology; and
Rukiyah Van Dross, PhD, Assistant Professor in Pharmacology and Toxicology.
The Department of Physiology did not have any tenured or tenure track female faculty members.

Three of these six female faculty members - Yan-hua Chen, Ph.D., Maria Ruiz-Echevarria, PhD, and Rukiyah Van Dross, PhD - were hired as Assistant Professors on tenure track as a result of the recruitment of their husbands by ECU.

**The evaluation process for tenure and promotion in the Department of Pharmacology and Toxicology**

The decision to deny my tenure and promotion was made by the three members of the Tenure and Promotion Committee of the Department of Pharmacology and Toxicology and the department chairman. The three members of the Tenure and Promotion Committees were the same: Professor Abdel Abdel-Rahman, Professor M. Saeed Dar, and Professor Brian McMillen. The Chairman of the department is Professor David A. Taylor.

The research expertise of Dr. Rahman, Dr. Dar, and Dr. McMillen spans from alcohol and drug addictions to control of blood pressure, and their research relied on whole-animal and behavioral approaches.
In contrast, my research program employed a combination of single-molecule biophysical approaches and molecular biology techniques to gain insight into basic mechanisms governing regulation of heart function.
Evaluation for tenure and promotion in the Department of Pharmacology and Toxicology, of Brody School of Medicine, East Carolina University (Department) is guided by the Promotions and Permanent Tenure Guidelines of the Department (**Exhibit 4**).

Evaluation for tenure and promotion should take into account the relative weights assigned to the three traditional areas of Teaching and Advising, Research, and Creative Activity and Professional Service (**Exhibit 4**). Because the research expertise of faculty members in any basic science department varies, and to avoid favoritism or bias in evaluations, the Universities have developed a mechanism for evaluation of research accomplishments of candidates for tenure. **This mechanism is based on opinions of External Peer Reviewers who are prominent scientific experts and have no affiliation with candidate's institution.** The goal of such evaluation is to provide unbiased assessment of scientific qualifications of the candidate for tenure and promotion.

Pursuant to the Promotions and Permanent Tenure Guidelines of the Department and Appendix D of ECU, I provided the names and addresses of four External Peer Reviewers in a letter of March 21, 2006 addressed to Dr. Abdel Abdel-Rahman, Chair of the Personnel Committee of the Department (**Exhibit 5**).

The three members of the Tenure and Promotion Committee of the Department, Professor Rahman, Professor Dar and Professor McMillen compiled an independent list of External Peer Reviewers who are experts in the area of my research field.

The three members of the Tenure and Promotion Committee of the Department, selected two (2) External Peer Reviewers - Dr. Diomedes Logothetis, Professor, Department of Physiology and Biophysics, Mount Sinai School of Medicine, New York, New York 10029, and Dr. Terence Hebert, Associate Professor, Department of Pharmacology and Therapeutics, McGill University Room 1303, McIntyre Medical Sciences Building, 3655 Promenade Sir William Osler, Montreal, Quebec, Canada H3G1Y6, from my list.

The members of the Tenure and Promotion Committee selected three (3) External Peer Reviewers from their independently generated list - Dr. Stanko S. Stojilkovic, Head, Section on Cellular Signaling ERRB, NICHD, NIH Bldg. 49, Rm. 6A18 MSC 4510, 49 Convent Drive, Bethesda, MD 20892-4510; Dr. Nancy Rusch, Professor and Chair, Department of Pharmacology and Toxicology, University of Arkansas for Medical Sciences, 4301 West Markham Street, Slot 611, Little Rock, AR 72205; and Dr. Craig A. Doupnik, Associate Professor, Department of Physiology and Biophysics, MDC 3033, University of South Florida, 12901 Bruce B. Downs Blvd., Tampa, FL 33612.

In uniform letters, dated May 25, 2006, the Chairman of the Department, Professor David A. Taylor solicited the opinions of the five External Peer Reviewers identified above (**Exhibit 6**, *External Peer Evaluations of Scholarly Activity*, Tatyana T. Ivanova-Nikolova, Ph.D., p. A2-A3; p. A8-A9; p. A13-A14; and p. A17-A18).

The letters of Professor Taylor stated:

"East Carolina University is considering the promotion of Dr. Tatyana Ivanova-Nikolova to the rank of Associate Professor with tenure. ECU is classified as a Doctoral II institution.

To aid us in rendering a wise decision regarding her promotion, we seek a thoughtful evaluation of the quality of the candidate's contribution to her professional field. You have been recommended to us as a person who is in a position to evaluate the candidate's research productivity and scholarly work. Since promotion and conferral of tenure involve consideration of criteria that include but go beyond the above-mentioned contribution, we do not ask you to make a judgment about the promotion itself. Rather, we seek your professional judgment concerning the quality of the candidate's scholarly contributions to the discipline.

Enclosed are an updated curriculum vitae and reprints of manuscripts that Dr. Ivanova-Nikolova has produced since her appointment here in 1999 for your review. A copy of our unit's criteria for promotion and /or tenure is also enclosed for your information. The portions of the guidelines that relate to Dr. Ivanova-Nikolova are those describing the guidelines for promotion from Assistant to Associate Professor. In addition, we are only requesting that you evaluate her contributions in research and creative activity. ...".

The "unit's criteria for promotion and /or tenure" provided by Professor Taylor to the five External Peer Reviewers, referenced above, are the Promotions and Permanent Tenure Guidelines of the Department (**Exhibit 4**).

The three members of the Tenure and Promotion Committee of the Department, namely Professor Abdel Abdel-Rahman, Professor Mohammad Saeed Dar and Professor Brian

McMillen used the same Promotions and Permanent Tenure Guidelines of the Department (**Exhibit 4**) as the ones provided by Professor Taylor to the five External Peer Reviewers.

**External Peer Reviews of my research productivity and scholarly work**

**Dr. Stanko S. Stojilkovic**

In a letter dated June 8, 2006 Dr. Stanko S. Stojilkovic provided an evaluation of my research productivity and scholarly work (**Exhibit 6**, p. A4-A7).

In his evaluation of my research productivity and scholarly work, Dr. Stanko S. Stojilkovic wrote:

"...I have worked in the Biophysical and Cellular Signaling fields over 30 years and have published over one hundred forty papers, about thirty book chapters, and several books. My scientific papers have received about 4,200 ICI citations by the scientific community. Enclosed please find a copy of my curriculum vitae demonstrating my qualifications to make this recommendation.

I do not know Dr. Ivanova-Nikolova in person and I never communicated with her. However, for the last 15 years I follow her published work in the field of ion channels, which is also the main point in my investigations....

Taken together, the applicant is not extremely productive in terms of numbers of papers. However, each of this paper is high quality, demonstrating her competence to address relevant questions in an extremely competitive area of investigations. From what I could gather from the package material, it appears that this excellent job was done on limited resources and difficult circumstances. First, she was able to keep the focus in investigations working in different institutions and countries. Second, this work has tremendously progressed on limited funds. Third, time was needed to finally establish her own laboratory. Fourth, it appears that she is the only female full time faculty member within the Department. Finally, she runs successfully the multidisciplinary project, which requires expertise in biophysics and electrophysiology, biochemistry, and mathematics. In that respect, she represents a positive example for young investigators, especially for those working in laboratories where funds are not limited and the multidisciplinary approach is achieved in collaboration. ...

In conclusion, during the last several years, I was asked to evaluate the quality of ten candidates for the promotion to the rank of Associate Professor at prestigious USA universities. Dr. Ivanova-Nikolova's is in the same stage of professional development as those candidates in terms of her research productivity and scholarly work. If her other contributions at the East Carolina University are equal to her contribution to the science of ion channels, I am positive she will receive her tenure and expand her investigations."

**Dr. Terence Hebert**

In a letter dated June 10, 2006 Dr. Terence Hebert provided an evaluation of my research productivity and scholarly work (**Exhibit 6**, p. A10- A12).

In his evaluation of my research productivity and scholarly work, Dr. Terence Hebert wrote:

"I have known Tatyana since March 1998 when I met her at the Geisinger Institute while she was a junior investigator. It did not take long for me to realize that she was an extremely deep thinker when it came to both theoretical issues and the design and interpretation of experiments. ...

Her work has had and will continue to have significant impact on the signaling community as well as on directed activity for undergraduate and graduate students under the applicant's supervision. She is an extremely careful and meticulous investigator who will certainly provide an excellent training environment. She has demonstrated a willingness to distribute this knowledge at many different academic levels. Having heard her speak on different occasions, I also feel that I can attest to her ability to teach and communicate her ideas.

It needs to be said here that while the applicant is not extremely productive in terms of numbers of papers- she is *extremely* productive in terms of the quality and completeness of her published studies. It is clear that is has taken some time to establish her own laboratory and the two recent *tour-de-force* articles that were published (on a modest budget) in the last couple of years that she is now on the right track as an independent investigator. I have seen a number of her recent grant applications as a reviewer and have made the same comments as here. In my opinion, the funding will come and it would be a great shame for ECU to miss out on an opportunity to keep her as a tenured faculty member. With reasonable funding, I'm sure we can expect great things from her.

Tatyana has made herself freely available to the community as participates as an *ad hoc* reviewer for journals and granting agencies. Several of my own students have singled her out for special praise for the time and interest she shoed in them when she visited once to give a seminar. In short, she is an ideal member of the scientific community.

**Summary**

I think that ECU would serve itself well by granting tenure to Tatyana Ivanova-Nikolova. Independent of her scholarly activities, she is an excellent person and a fantastic colleague. I hope you find this evaluation helpful in your deliberations."


**Dr. Nancy Rusch**

In a letter dated July 15, 2006, Dr. Nancy Rusch provided an evaluation of my research productivity and scholarly work (**Exhibit 6**, p. A15 - A16).

In her evaluation of my research productivity and scholarly work, Dr. Nancy Rusch wrote:

"...As you requested, I will evaluate the quality of the candidate's contribution to her professional field as it relates to her research and creative activity (Promotion and Tenure Guidelines, East Carolina University, Section III). I do not know the candidate, but we have common scientific interests in potassium channel biology and function in the cardiovascular system. Furthermore, I served as the Chair of the Rank and Tenure Committee at the Medical College of Wisconsin before I assumed a Chair position at the University of Arkansas for Medical Sciences in 2005. In this latest position, I am

inherently involved in evaluating faculty for promotion. Thus, I will judge Dr. Dr. Ivanova-Nikolova's qualifications against an extensive database observed for faculty of similar status. I will comment, in turn, on how the candidate measures up to two criteria used to evaluate research and creative activity: 1) The quality and significance of scholarly productivity; and 2) national reputation relative to successful scientists in the same field and stage of professional development. ...

Based on her academic record and the Promotions and Permanent Tenure Guidelines of East Carolina University, it appears that Dr. Ivanova-Nikolova meets the standards for research and creative activity. Her aggressive pursuit of federal funds to support her laboratory and the positive review of her NSF grant are clear indications that she will provide further excellence to research at the department and institutional level."


**Dr. Craig Doupnik**

In a letter dated July 5, 2006, Dr. Craig Doupnik provided an evaluation of my research productivity and scholarly work (**Exhibit 6**, p. A19 – A20).

In his evaluation of my research productivity and scholarly work, Dr. Craig Doupnik wrote:

"I know Dr. Ivanova-Nikolova through her scientific contributions to the field of GIRK channel regulation by G protein subunits in atrial myocytes. I recall meeting Dr. Ivanova-Nikolova at a poster session during a past scientific meeting, and have been familiar with her scientific work for many years regarding the elegant single channel studies she published as a postdoctoral fellow with Dr. Brietwieser at John Hopkins (1997), and then as a Research Scientist/Assistant Professor at the Wies Center for Research working with Dr. Robishaw (1998). These early studies clearly laid the foundation for the research program Dr. Ivanova-Nikolova has now independently developed at ECU.

Since arriving at ECU in 1999, Dr. Ivanova-Nikolova has published 2 high-quality manuscripts in 2004 on GIRK channel structure and function in top-tier peer reviewed journals (Biophysical Journal and the Journal of Biological Chemistry). The JBC in particular caught my eye as being a significant advance in the GIRK channel field. ...The submitted JBC paper abstract suggests the composition of the GIRK channel signaling complex is dynamically regulated by different G protein signaling pathways in atria, and once published, will undoubtedly bring national recognition and establish Dr. Ivanova-Nikolova as a major independent contributor to this field. ... Finally, the technical challenges involved in the type of research Dr. Ivanova-Nikolova performs should be considered when doing the typical "paper count" to measure research productivity. There are also appears to be a significant teaching effort as part of her academic duties. The experiments being carried out in her lab are difficult and time consuming, and extremely important to advance the field. Two papers in six years may initially on the moderate to low side, yet given it takes a year or two to fully setup an electrophysiology/biochemistry lab, and a couple of years to generate data, write up manuscripts, and submit for publication, this is not overly concerning given the high-quality of the 2 published papers and the impact on the field. The submitted manuscripts and those in preparation indicate the lab is "ramping up", and with an infusion of external funding, it would seem a

publication rate of 1-2 per year is likely and appropriate for Dr. Ivanova-Nikolova's area of research and her career stage.

Thus in summary, I have a high regard for Dr. Ivanova-Nikolova's scholarly contributions thus far as an independent investigator at ECU."

**The decision to deny my tenure and promotion in the Department of Pharmacology and Toxicology**

The three members of the Tenure and Promotion Committee of the Department, Professor Abdel Abdel-Rahman, Professor Mohammad Saeed Dar and Professor Brian McMillen reviewed my Personnel Action Dossier (PAD) in November 2006.

According to requirements of Appendix D (**Exhibit 1**) my PAD consisted of three components:

*Research and scholarly work portfolio;*

*Teaching portfolio;* and

*Service portfolio.*

The *Research and scholarly work* component of my PAD was identical to the *Research and scholarly work* portfolio provided by Dr. Taylor to the External Peer Reviewers. Per requirements of Appendix D (**Exhibit 1**), the External Peer Evaluations were added to the *Research* component of the PAD.

Per requirements of Appendix D (**Exhibit 1**) and Promotions and Permanent Tenure Guidelines of the Department (**Exhibit 4**), my *Teaching* portfolio consisted of enumeration of the lectures and topics taught by me in different courses offered by the Department to medical students, graduate students, physician assistant students and undergraduate students for each academic year. My service as a Director of one of the graduate courses taught annually by the Department was also documented.

Per requirements of Appendix D (**Exhibit 1**) and Promotions and Permanent Tenure Guidelines of the Department (**Exhibit 4**), my *Teaching* portfolio also included lecture materials (handouts) developed by me for medical students, graduate students and physician assistant students.

My *Teaching* portfolio also contained the mandatory *Peer Evaluations of Teaching Effectiveness*, conducted during the fist and the third year of my probationary term as required by the Code of UNC System.

Per requirements of Appendix D (**Exhibit 1**) and Promotions and Permanent Tenure Guidelines of the Department (**Exhibit 4**), my *Teaching* portfolio also included the *Student Evaluations of Teaching Effectiveness* for the first, second and third year of my probationary term.

My *Service* portfolio documented my service as a member of Departmental Committees, my service as a reviewer for different scientific journals and my professional service as a reviewer for different funding agencies.

My PAD also contained the annual *Individual Faculty Evaluations*, provided by Dr. Taylor and the Promotions and Permanent Tenure Guidelines of the Department.

Case 4:08-cv-00209-BR   Document 48-12   Filed 03/02/11   Page 9 of 16

9

In two memoranda of November 6, 2006 addressed to Professor Taylor, Dr. Abdel Abdel-Rahman, Personnel Committee Chairman, conveyed the recommendation of the Tenure and Promotion Committee to deny my tenure (**Exhibit 7**) and promotion to Associate Professor (**Exhibit 8**).

The two memoranda indicated that the members of the Tenure and Promotion Committee reviewed my PAD (**Exhibits 7 and 8**).

The two memoranda contained three sentences each.

The two memoranda did not provide the reason for the decision to deny my tenure and promotion to Associate Professor.

In two memoranda of December 6, 2006 addressed to Phyllis Horns, RN, DSN, FAAN, the Department Chairman, Professor Taylor recommended the denial of my permanent tenure (**Exhibit 9**) and promotion to the rank of Associate Professor (**Exhibit 10**).

The two memoranda (**Exhibits 9 and 10**) indicated that Professor Taylor had reviewed my PAD with the additional material.

**Research expertise of Professor David A. Taylor**

At the time of denial of my tenure and promotion, the only other research group in the Department of Pharmacology and Toxicology that deviated from whole-animal studies and focused on the molecular mechanisms of membrane signaling, using similar biophysical approaches (patch-clamp electrophysiology) was the group lead by Professor Taylor. Indeed, Professor Taylor was recruited at the end of 2000, as the new chair of the Department to establish a research program similar to mine – the only difference being that Dr. Taylor's group uses neurons (the building blocks of the nervous system), while I was using cardiac myocytes (the building blocks of the heart).

Since Professor Taylor's arrival in the Department - in January 2001- until my departure in June 2008, the group of Professor Taylor had not generated a single independent publication at ECU. This is a span of more than seven years.

For three and a half of these seven years, Professor Taylor had a Research Associate Professor working full time with him.

In addition, for the entire span of seven years Professor Taylor had two Research Assistants working full time with him. One of the Research Assistants and the Research Associate Professor were a part of the research group of Professor Taylor in his previous institutions. In other words, they were fully trained and familiar with his research objectives. The second Research Assistant was working with the previous Chair of the Department and was very experienced as well.

In addition, Professor Taylor had two graduate students, working toward their PhD degrees under his supervision.

All personnel in Professor Taylor's group was supported by departmental state funds. Since Professor Taylor's arrival in the Department - in January 2001- until my departure in June 2008, Professor Taylor had no extramural funding for his research.

By contrast, despite the many obstacles I had to overcome, my research program was up and running and my group had published three high-profile papers from our work at ECU. Our third and final paper published from ECU addressed the mechanisms of congestive heart failure – a serious heart condition with a high prevalence in Eastern North Carolina.

Professor Taylor conveyed to me his decision and the decision of the Tenure and Promotion Committee to deny my tenure and promotion in his office. He explained his decision in a single phrase: "Tatyana, you and Emil do fine research, you just do not do enough of it."

The facts are:

I had a single collaborator, working with me.

I had been treated unequally compared to my male colleagues in the Department.

I had to endure a hostile work environment since the beginning of my probationary term at ECU.

I do not believe in confrontations with my colleagues. And I always try to avoid confrontations by being the best scientist, teacher and colleague I could be.

I did not make the allegation that my senior colleagues denied my tenure and promotion based on gender discrimination lightly. The injustice in this decision and the statement of Professor Taylor that accompanied this decision did not leave me a choice.

Before filing a complaint with EEOC, I sought help from the Brody School of Medicine Tenure and Promotion Committee, Faculty Senate and ECU administration.

**The evaluation process for tenure and promotion in the Brody School of Medicine of East Carolina University**

The tenure and promotion decisions in the departments of the Brody School of Medicine are forwarded for review to a school-wide Tenure and Promotion Committee. This committee consists of nine voting members. The faculty body of Brody SOM elects eight members, while the Dean appoints the ninth member. The representatives of the Basic Science Departments normally review the Personnel Action Dossiers of candidates from other Basic Science Departments, while the representatives of Clinical Departments review the candidacies of clinical faculty members. The names and the affiliations of the Committee members are provided below:

<u>Brody School of Medicine Tenure and Promotion Committee</u>

**Edward Seidel, PhD – Physiology, Research Interests: polyamines and cellular proliferation**
James Cummings, MD – Pediatrics
Jon Moran, MD – Surgery
**Ann Sperry, PhD – Anatomy and Cell Biology, Research Interests: mammalian spermatogenesis and molecular motors**
Kathy Kolasa, PhD – Family Medicine

James Byrd, MD – Internal Medicine
**James McCubrey, PhD – Microbiology and Immunology, Research Interests: role of Raf/MEK/MAP kinase in breast and prostate cancer**
Todd Savitt, PhD –Medical Humanities
Karlene Hewan-Lowe, MD – Pathology and Laboratory Medicine
Lisa Sutton, Resource – Personnel Administration

The names of the three faculty members representing the Basic Science Departments are shown in bold.

The role of this Committee is to ensure the integrity of the review process and to advise the Dean of Medical School.

In a letter of December 8, 2006 to Todd Savitt, PhD, Chairman of the Brody SOM Tenure and Promotion Committee I attempted to emphasize the strengths of my research program and the environment in which this program was developed (**Exhibit 11**).

In a letter of December 19, 2006 Dr. Savitt indicated that he and his Committee are not permitted to use additional information and the Brody SOM Tenure and Promotion Committee shall use the same information that the department Tenure and Promotion Committee and the department chair used in my evaluation (**Exhibit 12**).

East Carolina University releases the composition of the Brody SOM Tenure and Promotion Committee, but no information about its deliberations.

In response to my request for production a communication between Dr. Savitt and Lisa Sutton of December 19, 2006 was provided to me (**Exhibit 13**). According to this email, Dr. Savitt was inclined to advise me to dispute in writing the recommendation of the dept committee and chair, but decided not to get into advising role. He "was surprised to see that the recommendations of the dept personnel comm. and the unit administrator regarding P & T are not there. Nor are cumulative summaries of her work during her probationary term written by the dept P & T comm. and by the unit administrator. Very frustrating, but I'm not sure we can do anything about it now, can we? She or the dept personnel comm. or unit administrator should have taken care of these letters (**Exhibit 13**)."

I attended an information session led by Lisa Sutton on how to prepare a PAD. She read Appendix D to us and I followed the instructions provided by Ms Sutton. East Carolina University provides separate guidelines and training to the members of its numerous committees that are not necessarily available to all faculty members. See also below a discussion between Dr. Lapicki and Dr. Long, regarding the rules of Faculty Hearing Committee.

Only now this information became available to me that the Tenure and Promotion Committee of the Department and Professor Taylor did not provide documents that were required by the Brody SOM Tenure and Promotion Committee.

In response to my request for production, East Carolina University provided the names of the two reviewers who reviewed my PAD (**Exhibit 14**):

Todd Savitt, PhD –Medical Humanities
Karlene Hewan-Lowe, MD – Pathology and Laboratory Medicine.

Karlene Hewan-Lowe, MD was the Dean Appointee on the committee.

Both reviewers do not have any scientific expertise, documented by research publications, in the field of membrane biophysics and signaling, single-molecule techniques and ion channels.

Karlene Hewan-Lowe, MD provided an affidavit that she read my scientific publications. She thought that I am not a strong candidate.

In response to my request for production of the actual reviews of Dr. Savitt and Dr. Hewan-Lowe, East Carolina University stated that the University does not have the reviews of the two reviewers (Todd Savitt, PhD and Karlene Hewan-Lowe, MD) who evaluated my PAD.

From the response of East Carolina University to my requests for production, it is apparent that Dr. Savitt and Dr. Hewan-Lowe did not prepare reviews of my PAD. After receiving the decision of the Interim Dean of Brody SOM, I filed a request for a hearing with the Faculty Committee of East Carolina University. In cases of an appeal, it is the responsibility of the Chancellor's office to preserve the integrity of the documents relevant to the personnel action.

**The decision of the Dean of Brody School of Medicine and the Vice Chancellor of Health Science Division of East Carolina University**

The final determination in the decisions for tenure and promotion rests with the Dean of Medical School, who makes recommendations to the Vice Chancellor for Health Science Division. The Vice Chancellor for Health Science Division then makes recommendations to the Chancellor of ECU.

In October 2006, Chancellor Ballard reassigned the Dean of Brody School of Medicine, Cynda Johnson MD, and the Vice Chancellor for Health Science Division, Dr. Michael J. Lewis, from leadership to support functions in the Health Science Division.

During this transition, Phyllis Horns, RN, DSN, FAAN who was serving as a Dean of the Nursing School of East Carolina University became the Interim Dean of Brody School of Medicine and Interim Vice Chancellor for Health Science Division.

Therefore, the final tenure and promotion decision was made by Phyllis Horns, RN, DSN, FAAN, who was serving as both the Interim Dean of Brody School of Medicine and Interim Vice Chancellor for Health Science Division.

In a letter of March 8, 2007, Phyllis Horns, RN, DSN, FAAN, conveyed to me her decision to concur with the recommendations of the departmental Personnel Committee and Chair not to recommend my promotion and conferral of permanent tenure (**Exhibit 15**).

The letter of Phyllis Horns, RN, DSN, FAAN, (**Exhibit 15**) begins: "Having carefully evaluated your PAD and having reviewed the recommendations on your behalf from the Department of Pharmacology, this informs you of my decision to concur with the recommendation of your departmental Personnel Committee and Chair not to recommend promotion and of my decision to concur with the recommendation of your departmental Personnel Committee and Chair not to recommend conferral of permanent tenure for you."

From the message of Dr. Savitt (**Exhibit 13**) that became available to me only during Discovery is apparent that "the recommendations of the dept personnel comm. and the unit administrator regarding P & T are not there." Nor are cumulative summaries of my work during my probationary term written by the dept P & T comm. and by the unit administrator.

Phyllis Horns also provided an affidavit that she is a strong supporter of the women faculty. Dr. Horns refers to her strong support to Dr. Rukiyah Van Dross, the African American woman faculty who was hired in the Department without a national search as a result of a dual recruitment package. Dr. Horns, however, did not mention the fact that the husband of Dr. Van Dross, James F. Anderson, PhD was recruited at the same time (2005) as Professor and Chair of the Department of Criminal Justice in the College of Human Ecology at East Carolina University.

Dr. Horns also did not indicate that the support to Dr. Van Dross evolved only after I filed my request for a Hearing with the Faculty Hearing Committee of East Carolina University in April 2006. Only after my request for a Hearing, the title of Dr. Van Dross appeared on the Department Web Page (**Exhibit 16**). The Faculty Hearing Committee discussed this topic in detail and the transcripts from the hearing will be entered as an exhibit below.

Phyllis Horns holds RN and DSN degrees in nursing and is a Fellow of the American Academy of Nursing. Like Dr. Savitt and Dr. Hewan-Lowe, Dr. Horns does not have any scientific expertise, documented by research publications, in the field of membrane biophysics and signaling, single-molecule techniques and ion channels.

In the presence of four very strong reviews of my Research and scholarly work provided by four nationally and internationally renowned External Experts, the decision of Dr. Horns indicates that she also discriminated against me because of my gender. During the Faculty Hearing, one of my witnesses, Professor Chalovich, who had served as a Chairman of the Brody SOM Tenure and Promotion Committee testified that it is very rare for the Committee to review a PAD with four so strong recommendations from all External Experts. Furthermore, the four External Experts were evaluating my Research and scholarly work against the guidelines of the Department for tenure and promotion. In the absence of cumulative summaries of my work during my probationary term written by the dept P & T comm. and by the unit administrator, and in the absence of reviews of Dr. Savitt and Dr. Hewan-Lowe, Dr. Horns was left to rely on the opinion of the External Experts, who were unanimously supportive.

Furthermore, in her role of Interim Dean of Brody School of Medicine on multiple occasions, she was responsible for the performance evaluations of departmental Chairs in Brody School of Medicine. Therefore, she should have been aware of the fact that with limited resources I was able to establish a successful research program in a scientific area identical to the scientific area of Professor Taylor.

In a summary, you have a male and a female professor with identical scientific expertise trying to develop the same contemporary scientific area in the same environment (the same department, the same university). The male professor has two Research Assistants working full time with him since 2001. The male professor also had for three and a half years a Research Associate Professor working with him full time from 2001 to 2004. The male professor also has two graduate students. At the beginning of 2007, the male

professor had not generated a single independent research publication at ECU. The female professor came to the same University in August 1999, the final portion of her startup funds, however, were not provided until 2002. She has a single Research Assistant working with her since 2000. At the beginning of 2007, she has published two high-profile papers (in 2004) and has a third one under review. The male professor is a full professor and has tenure, but the Dean is in charge of his overall annual evaluations. The same Dean evaluates the candidacy of the female professor for tenure and promotion from an assistant to associate professor. The Dean denies the tenure and promotion of the female professor. Afterwards, the Dean submits an Affidavit that the research program of the female professor was not strong. Regardless of the gender of the Dean, this is a classical example of gender discrimination against the female professor.

After receiving the decision of Dr. Horns I turned for help to the Faculty Senate.

**The Faculty Hearing**

On April 26, 2007, I filed a Request for a hearing (accompanied by 17 exhibits) with Professor Greg Lapicki, Chair of the Faculty Hearing Committee of East Carolina University.

On May 7, 2007, the Faculty Hearing Committee, chaired by Dr. Lapicki, validated my request for a hearing (**Exhibit 17**).

The Faculty Hearing Committee of East Carolina University held a hearing on my appeal of the non-conferral of permanent tenure on June 4 and 5, 2007.

This hearing was transcribed by Court Reporters from Carolina Court Reporters, Inc., 105 Oakmont Professional Plaza, Greenville, NC 27858 (**Exhibit 18**).

During the hearing, Dr. Joseph Chalovich, Professor in the Department of Biochemistry and Molecular Biology of Brody School of Medicine, East Carolina University testified that he did serve as the chair of the Promotion and Tenure Committee for several years in the Brody School of Medicine. In his experience of being on the Promotion and Tenure Committee of Brody School of Medicine for three or four years that usually "you didn't normally see four very strong letters. ...You might see one very strong one, and you might see one that's sort of indifferent. These all look like carbon copies. They all recognize that her productivity wasn't high in terms of numbers, but they all thought that the value of publications is very high (**Exhibit 18,** vol. 1, p. 103 - 105).

Because of all negative comments with regard to my research, in the Affidavits introduced by the Defendants with their motion of December 1, 2010, I will introduce the actual reviews of my grant applications (**Exhibit 19**). These were the reviews present in my PAD for the review by the members of the Tenure and Promotion Committees in the Department and Brody School of Medicine. It is clear that the position of ECU in this case is based upon affidavits, while my position is based on documents and facts.

In the interest of not inundating the Court, I would like to introduce the **Exhibit 18** and my Position Statement of October 1, 2007, prepared for Dr. Charles Waldrup, Associate Vice President for Legal Affairs at the Office of the President, UNC (**Exhibit 20**) as my

response to the second claim of the Defendant related to the incidents of hostile work environment. The documents supporting each one of these claims were introduced with my previous Affidavit of May 2009. During the transcribed faculty hearing held on June 4 and 5, 2007 all incidents of hostile work environment were discussed and all members of the Tenure and Promotion Committee and the Chairman of the Department had the possibility to voice their opinions. I do not need to paraphrase their statements.

A discussion between Dr. Lapicki and Dr. Long – two of the members of the Hearing Committee – that followed the hearing on June 8, 2007, is also included as **Exhibit 21**. This discussion is directly relevant to the acts of hostile work environment presented during the hearing. I cannot state it more eloquently than Dr. Long that the responsibilities for all negativity in this case rest with the Chair of the Department, Dr. Taylor.

My response to the Defendant's Motion to Dismiss My Claim For Retaliation (III) is a compilation of documents relevant to this claim (**Exhibit 22**).

**IN CONCLUSION, I WOULD RESPECTFULLY REQUEST THIS COURT TO CONSIDER THE CONTENTS OF THIS AFFIDAVIT AND THE SUPPORTING DOCUMENTATION AND TO DISMISS THE MOTION OF THE DEFENDANTS FOR SUMMARY JUDGMENT.**

Respectfully submitted this the 26th day of January 2011.


SWORN TO THIS THE ___ DAY OF MARCH 2011.

_____
Tatyana T. Ivanova-Nikolova, Ph.D.

ANGELA N. LEWIS
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES SEPT. 30, 2013
COMMISSION # 7272467


Tatyana T. Ivanova-Nikolova, Ph.D.
11204 Fanwood Ct.
Richmond, VA 23233
Phone Number: (804) 270-6027
Email: nikolovs4@verizon.net